MONROE BEVERAGE COMPANY, INC v STROH BREWERY
COMPANY

Docket No. 157059. Submitted November 15, 1994, at Detroit. Decided
June 2, 1995, at 9:10 A.M. Leave to appeal sought.

Monroe Beverage Company, Inc., brought an action in the Monroe Circuit Court against Stroh Brewery Company and others, alleging that Stroh violated provisions of the Liquor Control Act in failing to consider and consent to the transfer of the exclusive wholesaler sale and distribution rights for certain Stroh products in certain counties from Cap Beverage, Inc., to Monroe following Monroe's purchase of Cap's assets. The court, William F. Lavoy, J., granted summary disposition for Stroh regarding some of Monroe's claims. Stroh appealed by leave granted the denial of its motion for summary disposition regarding Monroe's other claims.

The Court of Appeals *held:*

1. Monroe had standing to pursue its claim pursuant to MCL 436.30b(29); MSA 18.1001(2)(29). A wholesaler such as Monroe who seeks a contract with a supplier can maintain a cause of action on theories other than contract where the supplier allegedly violated § 30b.

2. The term "material qualifications" in § 30b(16) of the Liquor Control Act, MCL 436.30b(16); MSA 18.1001(2)(16), refers to qualifications that are important or necessary to the supplier. The language of the statute is not impermissibly vague. The term "reasonable qualifications" in § 30b(16) is not unconstitutionally vague. The statute's definition of "reasonable qualifications" in § 30b(2)(f) as "the average standard of the criteria used by the respective supplier" means the typical criteria used by the supplier in relation to its wholesalers. The language is as specific as the subject matter requires.

3. Section 30b does not unconstitutionally impair Stroh's right to contract. Even if Stroh's right to contract had been substantially impaired, the statute is valid because there is a

REFERENCES

Am Jur 2d, Constitutional Law § 396; Intoxicating Liquors §§ 122, 123.

See ALR Index under Constitutional Law; Intoxicating Liquors.

legitimate and significant public purpose behind the statute's regulations and the means used to regulate contracts between beer suppliers and wholesalers are reasonably related to the purposes of the act.

Affirmed.

1. INTOXICATING LIQUORS — ACTIONS — STANDING — CONTRACTS — WHOLESALERS — SUPPLIERS.

A wholesaler of beer who alleges damages resulting from a violation of the provisions of § 30b of the Liquor Control Act by a supplier of beer has standing to bring an action against the supplier without regard to whether the parties have privity of contract and regardless of whether the wholesaler's claims ultimately are found to be meritorious; a wholesaler who seeks to contract with a supplier may maintain a cause of action on theories other than contract where the supplier allegedly violated § 30b (MCL 436.30b; MSA 18.1001[2]).

2. INTOXICATING LIQUORS — WHOLESALERS — SUPPLIERS — WORDS AND PHRASES — "MATERIAL QUALIFICATIONS."

The term "material qualifications" in § 30b(16) of the Liquor Control Act is not impermissibly vague and refers to those qualifications that are important or necessary to the supplier (MCL 436.30b[16]; MSA 18.1001[2][16]).

3. INTOXICATING LIQUORS — WHOLESALERS — SUPPLIERS — WORDS AND PHRASES — "REASONABLE QUALIFICATIONS."

The term "reasonable qualifications" in § 30b(16) of the Liquor Control Act is not impermissibly vague; the statute, in § 30b(2) (f), defines the term as "average standard of the criteria used by the respective supplier for wholesalers" and "average standard" means the typical criteria used by the supplier in relation to its wholesalers (MCL 436.30b[2][f],[16]; MSA 18.1001[2][2] [f],[16]).

4. CONTRACTS — STATUTES — CONSTITUTIONAL LAW — IMPAIRMENT OF CONTRACTUAL RIGHTS.

Courts must consider whether a statute has substantially impaired a contractual relationship in order to determine whether a party's contractual rights have been unconstitutionally impaired; there is no constitutional violation if the impairment is minimal; if the impairment is severe, the statute is valid only if there is a legitimate and significant public purpose behind the regulation and the means used to implement the legislation are reasonably related to the public purpose; the degree to which an industry has been regulated in the past is of particular

importance in considering a claim that the impairment of contract rights is substantial.

*Amberg, McNenly, Zuschlag, Firestone & Lee, P.C.* (by *Dirk F. Zuschlag* and *Michael K. Lee*), for Monroe Beverage Company, Inc.

*Butzel Long* (by *Philip J. Kessler*), and *Ufer Spaniola Fallucca & Cheli, P.C.* (by *David H. Oermann* and *Kevin F. O'Shea*), for Stroh Brewery Company. Detroit, Bloomfield Hills

Amici Curiae:

*Willingham & Coté, P.C.* (by *Ray Foresman* and *Anthony S. Kogut*), for the Michigan Beer & Wine Wholesalers Association.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John A. Krsul, Jr.,* and *Robert W. Powell*), for the Beer Institute.

Before: MARILYN KELLY, P.J., and J. H. GILLIS* and M. D. SCHWARTZ,** JJ.

MARILYN KELLY, P.J. Defendant, The Stroh Brewery Company, appeals by leave granted from the denial of a motion for partial summary disposition pursuant to MCR 2.116(C)(8). On appeal, Stroh asserts that the trial court erred in concluding that plaintiff, Monroe Beverage Company, Inc., had standing to pursue a cause of action against Stroh under the provisions of MCL 436.30b *et seq.*; MSA 18.1001(2) *et seq.* It also challenges the constitutionality of MCL 436.30b; MSA 18.1001(2). We affirm.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

** Circuit judge, sitting on the Court of Appeals by assignment.

I

The underlying facts are not in dispute. In 1984, Stroh and Cap Beverage, Inc. entered into a "Wholesaler Agreement." Under it, Cap Beverage obtained the exclusive wholesaler sale and distribution rights for certain Stroh products in Hillsdale and Lenawee Counties. Stroh reserved the right to disapprove a "Control Change", defined as (1) a change in ownership of the right to market Stroh's products wholesale or (2) the sale of a substantial portion of a wholesaler's assets used to market Stroh's products.

The owner of Cap Beverage died in 1984. The company notified Stroh that it was seeking a buyer for its assets including its right to sell and distribute Stroh's products. Stroh requested certain information to evaluate any proposed transaction. Cap Beverage did not provide such information to Stroh. Stroh also notified Cap by letter that it wished to consolidate its distribution rights with other existing Stroh wholesalers whenever possible.

Two companies bid on the assets. Stroh evaluated and rejected one of them. The other, Monroe, notified Stroh that it had submitted a bid to Cap and requested the forms necessary to apply for Stroh's approval. Stroh responded indicating that it wished to consolidate brands and geographic trade areas with existing wholesalers where possible. It never sent the requested forms to Monroe.

Monroe purchased Cap's assets on August 24, 1990. It informed Stroh of the purchase and again requested the necessary forms. Stroh responded that Monroe's purchase of Cap and its Stroh sale and distribution rights violated the distribution agreement. It asserted that the unapproved sale resulted in the immediate and automatic termina-

tion of the agreement. It refused to consider Monroe Beverage and granted Cap's sale and distribution rights to another wholesaler.

Monroe filed suit, alleging that Stroh had violated the provisions of the Liquor Control Act, MCL 436.1 *et seq.*; MSA 18.971 *et seq.* It argued that Stroh failed to appropriately consider and consent to the transfer of distribution rights to Monroe. It added Cap as a party defendant.

Stroh moved for summary disposition. The judge denied Stroh's motion as to Count I of the complaint, which reiterated the statutory violation. It did the same as to Count v, which alleged that Stroh had negligently failed to comply with its own Wholesaler Agreement in denying Monroe's transfer request. The judge granted Stroh's motion for summary disposition of Monroe's claims of fraud, tortious interference and third-party-beneficiary status. There remains one claim of fraud/ misrepresentation to be resolved by the trial court.

II

A

On appeal, Stroh asserts that Monroe, as a potential transferee, lacked standing to challenge its decision to terminate the wholesaler's agreement and award the contract to another. Stroh asserts that the only party with standing is the wholesaler who had a preexisting agreement with it at the time the alleged violation occurred.

In contrast, Monroe contends that it suffered actual damages as a result of Stroh's violation of MCL 436.30b; MSA 18.1001(2). Therefore, the language of § 30b(29) permits it to maintain a cause of action, despite the lack of a preexisting agreement between it and Stroh. Thus, Monroe claims that it

had standing to pursue a claim against Stroh for Stroh's alleged unlawful refusal to transfer the distribution rights under MCL 436.30b; MSA 18.1001(2).

Whether a transferee of sales and distribution rights has standing to sue a beer supplier for failure to comply with the Liquor Control Act is a matter of statutory interpretation. Statutory interpretation is a question of law reviewed on appeal de novo. *People v Young,* 206 Mich App 144, 154; 521 NW2d 340 (1994).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Stanaway,* 446 Mich 643, 658; 521 NW2d 557 (1994); *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993); *People v Hawkins,* 181 Mich App 393, 396; 448 NW2d 858 (1989). If reasonable minds can differ as to the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). The court must look to the object of the statute, the harm it is designed to remedy, and apply a reasonable construction which best accomplishes the statute's purpose. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994); *In re Forfeiture of $5,264,* 432 Mich 242, 248; 439 NW2d 246 (1989). Nothing will be read into a statute which is not within the manifest intention of the Legislature as gathered from the act itself. *In re Marin,* 198 Mich App 560, 564; 499 NW2d 400 (1993).

In construing a statute, the court should presume that every word has some meaning and should avoid any construction which would render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp,* 439 Mich 623, 635; 487 NW2d 155 (1992). The omission of a provision in

one part of a statute which is included in another part should be construed as intentional. *Farrington,* p 210.

Moreover, we review a motion for summary disposition pursuant to MCR 2.116(C)(8) by reference to the pleadings alone. All factual allegations supporting a claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *ETT Ambulance Service Corp v Rockford Ambulance, Inc,* 204 Mich App 392, 395-396; 516 NW2d 498 (1994).

B

Resolution of the dispute here hinges on the interaction of several sections of the Liquor Control Act at MCL 436.30b; MSA 18.1001(2).

Section 30b begins by stating that regulation of the business relationship between beer wholesalers and beer suppliers is necessary: (1) to maintain stability and healthy competition in the beer industry in the state, (2) to promote and maintain a sound, stable and viable three-tier system of distribution of beer to the public and (3) to promote the public health, safety and welfare. MCL 436.30b(1) (a)-(c); MSA 18.1001(2)(1)(a)-(c).

Section 30b(16) sets forth the responsibility of the supplier to approve a proposed transfer if the proposed transferee meets "the material and reasonable qualifications and standards required by the supplier." It also provides that "a transfer of a wholesaler's business which is not approved by the supplier shall be null and void." MCL 436.30b(16); MSA 18.1001(2)(16).

Thus, as it had never approved it, Stroh contends that it was well within its rights to treat as void the transfer of Cap's sales and distribution rights to Monroe. It adds that as Cap, not Monroe, was party to the agreement regulated by the statute, Monroe lacked standing to challenge Stroh's decision to refuse to approve it.

C

Setting aside for the moment the question of Stroh's right to approve or disapprove the transfer, we deal first with the issue of Monroe's standing. MCL 436.30b(28); MSA 18.1001(2)(28) provides:

> If a supplier engages in conduct prohibited under this section, a wholesaler with which the supplier has an agreement may maintain a civil action against the supplier to recover actual damages reasonably incurred as the result of the prohibited conduct. If a wholesaler engages in conduct prohibited under this section, a supplier with which the wholesaler has an agreement may maintain a civil action against the wholesaler to recover actual damages reasonably incurred as the result of the prohibited conduct.

Clearly, this portion of the statute confers standing upon any wholesaler which has entered into a distribution agreement with a supplier. However, it is equally clear that Monroe, lacking an agreement with Stroh, cannot claim standing under this portion of the statute. If Monroe has standing to pursue its claim, it must be granted elsewhere in the statute.

MCL 436.30b(29); MSA 18.1001(2)(29) provides:

> A supplier that violates any provision of this section is liable for all actual damages and all

court costs and reasonable attorney fees incurred by a wholesaler as a result of that violation. A wholesaler that violates any provision of this section is liable for all actual damages and all court costs and reasonable attorney fees incurred by the supplier as a result of that violation.

This provision confers standing upon any wholesaler who alleges damage from a supplier's violation of the provisions of § 30b without regard to whether the parties have privity of contract. Standing exists regardless of whether Monroe's claims against Stroh are ultimately found to be meritorious. Whether Stroh violated § 30b is a factual question not relevant to the question of Monroe's standing to pursue its claim.

To conclude otherwise would render the restrictive language of § 30b(28), which grants standing to a wholesaler with which the supplier has an agreement, surplusage. Furthermore, failure to recognize Monroe's standing would render § 30b(29) meaningless. Unless § 30b(29) is construed to refer to a group of wholesalers different from those identified in § 30b(28), it is a mere redundancy. Statutory interpretation should avoid such a result. See *Altman,* p 635.

Moreover, to conclude that Monroe lacks standing would generally insulate suppliers from claims arising from their refusal to act when a transfer of sales and distribution rights is proposed. The statute mandates that the supplier act promptly and give consent to qualified transferees.

Granting standing to Monroe promotes the stated purposes of § 30b. Permitting Monroe to maintain its action does not alter the relationship between a supplier and one of its established wholesalers, as these are otherwise defined by § 30b. Rather, our decision merely recognizes that a wholesaler who seeks to contract with a supplier

can maintain a cause on theories other than contract where the supplier allegedly violated § 30b. MCL 436.30b(29); MSA 18.1001(2)(29).

III

Stroh also asserts that MCL 436.30b; MSA 18.1001(2) is void, because it is unconstitutionally vague. A statute may be challenged for vagueness on three grounds: (1) it is overly broad and impinges on First Amendment freedoms; (2) it does not provide fair notice of the conduct proscribed; or (3) it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed. *People v Heim,* 206 Mich App 439, 441; 522 NW2d 675 (1994). A challenge to the constitutionality of a statute raises a question of law which we review de novo. *In re Lafayette Towers,* 200 Mich App 269, 272; 503 NW2d 740 (1993).

Stroh particularly challenges the language of § 30b(16), which states in part:

A supplier shall not withhold consent to any transfer of a wholesaler's business if the proposed transferee meets the material and reasonable qualifications and standards required by the supplier. [MCL 436.30b(16); MSA 18.1001(2)(16).]

Stroh argues that the term "material" is not defined.

If the statute provides its own glossary, the terms must be applied as expressly defined. *Harder v Harder,* 176 Mich App 589, 591; 440 NW2d 53 (1989). Otherwise, a court may consult dictionary definitions. *Popma v Auto Club Ins Ass'n,* 446 Mich 460, 470; 521 NW2d 831 (1994).

Since "material" is not defined in the glossary,

reference to a dictionary is appropriate. Black's Law Dictionary (4th ed, 1957) defines "material" as being "[i]mportant; more or less necessary; having influence or effect; going to the merits; having to do with matter, as distinguished from form." In the context of the statute, material qualifications are those which are important or necessary to the supplier. The language is not impermissibly vague. See *Allison v Southfield,* 172 Mich App 592; 432 NW2d 369 (1988).

Stroh similarly argues that the term "reasonable qualifications" is unconstitutionally vague, because the statutory definition refers to the "average standard of the criteria" used by the respective supplier. MCL 436.30b(2)(f); MSA 18.1001(2)(2)(f). We agree with the trial judge's analysis of this claim:

> [W]hile the word "average" has both a mathematical meaning, as in "median", "norm" and "mean" it also means "a level (as of intelligence) typical of a group, class, or series." *Webster's Ninth New Collegiate Dictionary,* (New York; Merriam-Webster Incorporated, 1983). "Standard" means, among other things, criterion. Given that a decision to accept a proposed transferee or to begin relations with a wholesaler must involve both objective economic determinations as well as subjective determinations such as perceived loyalty and commitment, the verbiage used in the Act is as specific as the subject matter requires.

In the context of the statute, the term "average standard" means the typical criteria used by the supplier in relation to its wholesalers. Stroh cannot establish that § 30b is void for vagueness.

IV

Stroh also asserts that MCL 436.30b; MSA

18.1001(2) impermissibly impairs its vested contract rights. We disagree. First, the agreement between Stroh and Cap was automatically renewed on the death of the original owner. The event occurred after the date on which § 30b took effect. The agreement is thus subject to the act's provisions. Furthermore, the court correctly concluded that, even if the act had taken effect after the agreement was made, application of its provisions would not unconstitutionally impair Stroh's right to contract.

To determine whether a party's contractual rights have been unconstitutionally impaired, the courts must consider whether the statute has substantially impaired a contractual relationship. If the impairment is minimal, there is no constitutional violation. If severe, the statute is valid only if: (a) there is a legitimate and significant public purpose behind the regulation, and (b) the means used to implement the legislation are reasonably related to the public purpose. *Romein v General Motors Corp,* 436 Mich 515, 534-536; 462 NW2d 555 (1990). The degree to which an industry has been regulated in the past is of particular importance in considering a claim that the impairment of contract rights is substantial.

Generally, legislation challenged on a constitutional basis is presumed to be valid. *Shavers v Attorney General,* 402 Mich 554, 613; 267 NW2d 72 (1978). Historically, the state has highly regulated the sale of alcoholic beverages, and legislation concerning their regulation has been afforded a high presumption of constitutionality. See *Fitzpatrick v Liquor Control Comm,* 316 Mich 83; 25 NW2d 118 (1946), overruled in part on other grounds in *Bundo v Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976). We afford § 30b the same

presumption. Moreover, we agree with the trial judge's conclusion that the regulations set forth in the statute at most minimally impair Stroh's right to contract.

Even if we were to conclude that Stroh's right to contract had been substantially impaired, we would find a legitimate and significant public purpose behind the regulations in § 30b. The means used to regulate contracts between beer suppliers and wholesalers are reasonably related to the purposes of the act. *Romein, supra.*

Affirmed.