TYLER v LIVONIA PUBLIC SCHOOLS (ON REMAND)

Docket No. 179336. Submitted March 19, 1996, at Detroit. Decided December 30, 1996, at 9:00 A M.

Reynold Tyler, following proceedings before a worker's compensation magistrate and the Worker's Compensation Appellate Commission, was awarded worker's compensation disability benefits subject to coordination pursuant to § 354 of the Worker's Disability Compensation Act, MCL 418.354; MSA 17.237(354), with disability pension benefits Tyler receives under § 86 of the Public School Employees Retirement Act, MCL 38.1386; MSA 15.893(196), through Livonia Public Schools. The Court of Appeals denied Tyler leave to appeal the coordination of benefits. The Supreme Court, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for consideration as on leave granted. 447 Mich 970 (1994).

On remand, the Court of Appeals *held*:

Section 354(1) of the worker's compensation act provides that coordination of benefits applies where for the same disability a person receives worker's compensation benefits and pension or retirement payments pursuant to a plan or program established or maintained by the employer. Section 354(14) states that coordination does not apply to any payments received or to be received under a disability pension plan in existence on March 31, 1982, and provided by the employer and further states that a disability pension plan entered into or renewed after March 31, 1982, may require that payments under that disability pension plan shall not be coordinated pursuant to § 354.

As used in § 354, "program" and "plan" have distinct meanings. "Program," as used in § 354(1), refers to a governmentally created system of reimbursement, protection, or remuneration like that provided in the Public School Employees Retirement Act. "Plan," as used in § 354(14), refers only to contractual obligations.

In this case, because the plaintiff's disability pension benefits are payable under a program, and not a plan, his worker's compensation benefits are, under § 354(1), subject to coordination with his disability pension benefits and not subject to the exemption from coordination provided for plans under § 354(14).

Affirmed.

SMOLENSKI, P.J., dissenting, stated that the distinction drawn by the majority between "program" and "plan," as used in § 354, is not supported by the legislative history behind § 354, that the plain and ordinary meanings of the terms are interchangeable, and that § 354(14) applies to exempt the plaintiff's worker's compensation benefits and disability pension benefits from coordination.

WORKER'S COMPENSATION — DISABILITY BENEFITS — PUBLIC SCHOOL EMPLOYEES DISABILITY RETIREMENT BENEFITS — COORDINATION.

Worker's compensation disability benefits and disability pension benefits received under the Public School Employees Retirement Act are subject to coordination pursuant to § 354(1) of the Worker's Disability Compensation Act (MCL 38.1386, 418.354[1]; MSA 15.893[196], 17.237[354][1]).

*Sachs, Waldman, O'Hair, Helveston, Hodges & Barnes, P.C.* (by *Granner S. Ries*), for the plaintiff.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Thomas L. Fleury* and *John J. Rabaut*), for the defendant.

ON REMAND

Before: SMOLENSKI, P.J., and MARKEY and P. J. SULLIVAN,* JJ.

MARKEY, J. This appeal of a September 24, 1993, opinion and order of the Worker's Compensation Appellate Commission, one member dissenting, comes to this Court "for consideration as on leave granted" pursuant to the order of the Michigan Supreme Court, *Tyler v Livonia Public Schools*, 447 Mich 970 (1994). The WCAC decision affirms the decision of the magistrate, which, while awarding plaintiff worker's compensation disability benefits, allows defendant Livonia Public Schools to coordinate those

───────────────

* Circuit judge, sitting on the Court of Appeals by assignment.

benefits with plaintiff's disability pension provided pursuant to MCL 38.1386; MSA 15.893(196). We affirm.

The pertinent facts are not in dispute. After many years of employment in the public school system as a general laborer, plaintiff suffered work-related back injuries that have disabled him from further employment. His last day of work was November 9, 1989. Plaintiff is receiving a disability pension pursuant to the Public School Employees Retirement Act, MCL 38.1386; MSA 15.893(196). The sole question presented is whether those disability pension benefits can be coordinated against defendant's worker's compensation liability.

Plaintiff presents two issues for review:

I. DID THE WCAC ERR AS A MATTER OF LAW IN CONCLUDING THAT PLAINTIFF'S DISABILITY PENSION MAY BE UTILIZED FOR COORDINATION PURPOSES UNDER § 354 OF THE WDCA TO FUND A PORTION OF DEFENDANT'S WORKER'S COMPENSATION LIABILITY TO PLAINTIFF?

II. IF DEFENDANT MAY UTILIZE PLAINTIFF'S PENSION BENEFIT TO FUND A PORTION OF ITS WORKER'S COMPENSATION LIABILITY TO PLAINTIFF, DOES THIS VIOLATE CONST 1963, ART 1, § 10 AND CONST 1963, ART 9, § 24?

The legal questions presented were not decided by the WCAC on the basis of a longstanding administrative interpretation of the relevant statutory provisions, but as an issue of first impression. Accordingly, we review such legal issues de novo, according only minimal deference to the administrative construction of the statute, and set aside an agency's ruling regarding a question of law only where a party's substantial rights were prejudiced because of a substantial and material error of law. *Schuhknecht v State Plumbing Bd*, 277 Mich 183, 186-187; 269 NW 136 (1936); *Ron-*

*ney v Dep't of Social Services*, 210 Mich App 312, 315; 532 NW2d 910 (1995).

The pertinent portions of § 354 of the Worker's Disability Compensation Act (WDCA), MCL 418.354(1)(d) and (14); MSA 17.237(354)(1)(d) and (14), are as follows:

> (1) This section is applicable when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 351, 361, or 835 with respect to the same time period for which . . . payments under . . . a disability insurance policy provided by the employer; or pension or retirement payments pursuant to a plan or program established or maintained by the employer, are also received or being received by the employee. Except as otherwise provided in this section, the employer's obligation to pay or cause to be paid weekly benefits other than specific loss benefits under section 361(2) and (3) shall be reduced by these amounts:

> \*     \*     \*

> (d) The after-tax amount of the pension or retirement payments received or being received pursuant to a plan or program established or maintained by the same employer from whom benefits under section 351, 361, or 835 are received, if the employee did not contribute directly to the pension or retirement plan or program. Subsequent increases in a pension or retirement program shall not affect the coordination of these benefits.

> \*     \*     \*

> (14) This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982. Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section.

The WCAC unanimously viewed subparagraph 14 as addressing disability pension arrangements resulting from collective bargaining, and this assessment is correct. What the parties and the WCAC seem to have overlooked, however, is the delicate phraseological distinctions the Legislature made between subparagraphs 1 and 14. In subparagraph 1, the Legislature authorized coordination for, *inter alia*, "pension or retirement payments pursuant to a plan or program established or maintained by the employer." By comparison, in subparagraph 14, an exception was made for payments received or to be received under a "disability pension plan provided by the same employer which plan is in existence on March 31, 1982."

Section 354 was initially added to the WDCA by 1981 PA 203, effective March 31, 1982. The Legislature linked the effective date of the statute with its disavowal of intent to affect preexisting disability pension plans for a reason that becomes obvious when the distinction between "plans" and "programs" is understood. Section 354(1), which deals collectively with plans *and* programs, is distinguished from subparagraph 14, which deals only with "plans," because a "plan" is a reflection of a contractual relationship between an employer and an employee, subject to regulation under the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*

By the same token, the ERISA provides a blanket exemption from its regulatory ambit for "government plans" established or maintained by the government of any state or political subdivision for its employees. 29 USC 1002(2)(a)(32) and 1321(b)(2). Although the Legislature did not provide a glossary in 1981 PA 203 (which became, *inter alia*, § 354 of the WDCA), we

must construe the statute in a manner that recognizes that phraseological distinctions in the subparagraphs of a statutory section presumably reflect a legislative intent to treat some things differently. *Stowers v Wolodzko*, 386 Mich 119, 133-134; 191 NW2d 355 (1971); *In re Brzezinski*, 214 Mich App 652, 663-664; 542 NW2d 871 (1995).

We think the distinction between a "program" and a "plan" as used in § 354 is based on a "program" as being a reference to a governmentally created system of reimbursement, protection, or remuneration. The disability pension benefits called for by the Public School Employees Retirement Act constitute a "program" that, albeit "established" by the Legislature, is "maintained" by the individual school district employer funding the program. For this purpose, funding is equivalent to "maintaining" such a program. *Dezwaan v Holland Motor Express*, 189 Mich App 575, 578; 473 NW2d 788 (1991). Plaintiff thus errs in contending that, if the disability pension benefits he receives are not immune from coordination because they are not a "plan" for purposes of subparagraph 14, they are likewise not a "plan" for purposes of coordination under subparagraph 1. This argument overlooks the crucial fact that subparagraph 1 applies to "programs" *as well as* "plans."

In recognizing that the reference in subparagraph 14 to "plans" refers only to contractual obligations, the Legislature reveals that it properly concerned itself with constitutional limitations on its authority. But for its inclusion of such a provision, the entire section might be declared unconstitutional as an impairment of the obligation of contracts, in violation of Const 1963, art 1, § 10 and US Const, art I, § 10.

See *Monroe Beverage Co, Inc v Stroh Brewery Co*, 211 Mich App 286, 297; 535 NW2d 253 (1995); *Washtenaw Community College Ed Ass'n v Washtenaw Community College Bd of Trustees*, 50 Mich App 467, 471-473; 213 NW2d 567 (1973). The Legislature thus applied coordination to contractual plans only if such plans are renewed or created after March 31, 1982, because the constitutional impediment does not apply to contracts made *after* the effective date of a statute. See, e.g., *Seitz v Probate Judges Retirement System*, 189 Mich App 445, 451-452, 455; 474 NW2d 125 (1991).

In contrast, government benefits payable pursuant to statute are not contractual in nature. See *Powers v Peoples Community Hosp Authority*, 183 Mich App 550, 554; 455 NW2d 371 (1990); *Guilbault v Dep't of Mental Health*, 160 Mich App 781, 784-785; 408 NW2d 558 (1987). Hence, the Legislature is not constrained by the Impairment of Contracts Clauses of the state and federal constitutions in modifying or amending statutory pension programs before the time that rights thereunder become fixed.

Plaintiff attempts to turn this prophylaxis on its head by arguing that the effect of coordinating his disability pension is to impair a contractual obligation. Plaintiff argues that, while under the Constitution of 1908, pensions granted by public authorities were not deemed to be contractual obligations but rather gratuitous allowances that could be revoked at will, Const 1963, art 9, § 24 declares that the *accrued* financial benefits of each pension plan and retirement system of the state and its political subdivisions "shall be a contractual obligation thereof which shall not be diminished or impaired." Thus, the Constitution of 1963 treats pension benefits as contractual obliga-

tions that may not be impaired by legislative enactment. *Advisory Opinion re Constitutionality of 1972 PA 258*, 389 Mich 659, 662-663; 209 NW2d 200 (1973); *Campbell v Judges' Retirement Bd*, 378 Mich 169, 180-182; 143 NW2d 755 (1966).

Accepting that principle, we find that it simply does not apply to disability pensions, except for persons who are already disabled and therefore whose right to such pension has vested ("accrued"). See, e.g., *Campbell, supra* at 180-181. In *Advisory Opinion, supra*, our Supreme Court quoted from the constitutional convention debates where proponents of what became art 9, § 24 aptly described nondisability pension benefits as simply deferred compensation for work performed. The same cannot be said of a disability pension for a person not yet disabled. Because plaintiff was not disabled on March 31, 1982, and had no right to a disability pension at that time, the subsequent adoption of coordination of such disability pensions with worker's compensation benefits neither deprived him of any vested right nor impaired the obligation of any contract. Yet, had plaintiff been potentially entitled to a disability pension under a collective bargaining agreement or other contractual form of obligation that was not entered into or renewed after March 31, 1982, subparagraph 14 of § 354 would be necessary to prevent an impairment of the obligation of such a contract. See *Kosa v State Treasurer*, 408 Mich 356, 371-372; 292 NW2d 452 (1980); *Washtenaw Community College Ed Ass'n, supra*.

In failing to recognize the distinction between "plans" and "programs," the WCAC lost itself in a thicket of reasoning from which it could not logically

extricate itself. The WCAC majority argued that, although the Public School Employees Retirement Act was not in relevant part amended after 1979, technical amendments after March 31, 1982, constituted a "renewal" or "entering into" of a disability pension plan. The original statute had no expiration date or sunset clause, however, and thus the Legislature simply "continued" the program rather than "renewed" it. Likewise, the Legislature, if it did anything, "created" a pension program rather than "entered into" one, the latter term usually applying to contractual obligations, not statutory enactments.

For like reason, it is irrelevant to this case, as the WCAC majority concluded, whether plaintiff or defendant had the burden of proof with respect to the application of subparagraph 14. Because that subparagraph does not apply by its terms, being limited to "plans" and having no application to "programs," evidentiary technicalities need not be considered. It may be that the employee should have the burden of proof, but the employer, who knows the details and dates of "entering into" and "renewing" such plans, may have the burden of coming forward with evidence— an issue to be addressed in some proper case and on which at this time we express no opinion.

Affirmed.

P. J. SULLIVAN, J., concurred.

SMOLENSKI, P.J. (*dissenting*). I respectfully dissent. I disagree that the plaintiff's disability pension under the Public School Employees Retirement Act (PSERA), MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.*, is received under a "program" but not a "plan" and,

therefore, subject to coordination by virtue of § 354(1)(d) of the Worker's Disability Compensation Act (WDCA), MCL 418.354(1)(d); MSA 17.237(354)(1)(d). Rather, for the reasons that follow, I would hold that plaintiff's disability pension is excepted from coordination by virtue of § 354(14) of the WDCA. I would reverse.

As stated in the majority opinion, the Worker's Compensation Appellate Commission concluded that § 354(14) was simply inapplicable to the legislatively mandated disability pension at issue in this case because that subsection was intended to apply to private-sector pension plans negotiated through the collective bargaining process. I acknowledge that a legislative analysis of § 354 somewhat supports this construction, particularly with respect to the second sentence of § 354(14). See Senate Analysis Section, SB 573 et al, January 7, 1982, noting that under Senate Bill 595, which was subsequently enacted as 1981 PA 203, § 354 of the WDCA, worker's compensation benefits would be coordinated with "pension and retirement benefits," although "[d]isability pensions [sic] plans could be exempted from coordination under a collective bargaining agreement under certain conditions." However, this same analysis also provides in relevant part as follows:

> [Senate bills 595 and 591] would apply to any of the specified benefits paid or payable after the effective date of the bills except for benefits received or to be received under a disability pension plan provided by the same employer liable for payments under the act and existing on the effective date of the bill. Any disability pension plan entered into or renewed after that date could provide that benefits paid under that disability pension plan would not be coordinated with benefits paid under the act. (*NOTE*: The bill would

also allow a disability pension plan to be exempted from
coordination of benefits. The apparent intent of the bill is to
draw a distinction between a "disability insurance policy"
or "wage continuation plan" and a "disability pension plan."
The current language of the bill would require coordination
of the first two while allowing the third to be exempted
from coordination. *However, the bill does not define these
three terms and some additional language or technical
amendments may be necessary to clarify the legislative
intent.*) [Senate Analysis Section, SB 573 et al, January 7,
1982 (discussing Senate Bill 595, which was subsequently
enacted as 1981 PA 203, § 354 of the WDCA).]

Thus, I conclude that the above legislative analysis
is not dispositive with regard to the issue whether
§ 354(14) was intended by the Legislature to apply
only to private-sector pension plans negotiated
through the collective bargaining process.

Moreover, this Court's inquiry into the Legislature's
intent when it passes a statute does not begin with
legislative analysis. *House Speaker v State Adminis-
trative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993).
Rather, the starting point in every case involving stat-
utory construction is the language of the statute itself.
*Id.* I agree with the majority that in construing a stat-
ute, effect must be given to every word, sentence, and
section if possible, and a construction that would
render any part of the statute surplusage or nugatory
must be avoided. *In re Brzezinski*, 214 Mich App 652,
663; 542 NW2d 871 (1995). However, another rule of
statutory construction provides that a particular for-
mat may be chosen by the drafters for clarity of form
rather than to create a substantive meaning. *In re
Marin*, 198 Mich App 560, 563; 499 NW2d 400 (1993).
Moreover, in construing a statute, every word or
phrase of the statute should be accorded its plain and

ordinary meaning, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1); *In re PSC's Determination Regarding Coin-Operated Telephones, No 2*, 204 Mich App 350, 353; 514 NW2d 775 (1994). Where, as here, terms are not defined, resort to a dictionary definition is appropriate. *People v Lee*, 447 Mich 552, 558; 526 NW2d 882 (1994). "Plan" is defined, in relevant part, as "a *program* for specified benefits, needs, etc.: *a pension plan.*" *Random House Webster's College Dictionary* (1992) (emphasis supplied, in part). "Program" is defined, in relevant part, as "1. a *plan* of action to accomplish a specified end. 2. a schedule of activities, procedures, etc., to be followed. . . . 6. a *planned*, coordinated group of activities, procedures, etc., often for a specific purpose: *a drug rehabilitation program.*" *Random House Webster's College Dictionary* (1992) (emphasis supplied, in part). Thus, if plaintiff's disability pension is a program and, more specifically, a program of benefits, then it is also a plan.

Statutory language should be construed reasonably, keeping in mind the purpose of the act. *Barr v Mount Brighton Inc*, 215 Mich App 512, 516; 546 NW2d 273 (1996). The WDCA is remedial and should be interpreted in a liberal and humanitarian manner in favor of the employee. *Matney v Southfield Bowl*, 218 Mich App 475, 486; 554 NW2d 356 (1996). Thus, I find that it is not possible to conclude that, as used in § 354(1)(d), the term "program" refers only to a governmentally created system of reimbursement, and that, as used in § 354(1) and (14), the term "plan" is limited only to private-sector, collectively bargained disability pensions. Rather, I would construe the term

"plan," as used in § 354(14), as encompassing the disability pension received by plaintiff under the PSERA.

I would further hold that plaintiff's disability pension comes within the remaining terms of § 354(14). The first sentence of § 354(14) provides as follows:

> This section does not apply to any payments received or to be received under a disability pension plan provided by the same employer which plan is in existence on March 31, 1982.

As discussed above, the monthly payments received by plaintiff were received under a disability pension "plan." Nor is there any question, as acknowledged by the WCAC, that plaintiff's disability pension plan was in existence on March 31, 1982. See 1980 PA 300.

The question remains whether the payments were "received . . . under a disability pension plan *provided by the same employer . . . .*" "Provided" is defined as "to make available; furnish: *to provide employees with benefits.*" *Random House Webster's College Dictionary* (1992). The Legislature enacted the PSERA. However, defendant was required to contribute to the plan and was considered the employer for purposes of the plan. See, generally, the PSERA, MCL 38.1301 *et seq.*; MSA 15.893(111) *et seq.* Accordingly, defendant made available or furnished and, therefore, "provided" the plan at issue in this case.

The second sentence of § 354(14) provides:

> Any disability pension plan entered into or renewed after March 31, 1982 may provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section.

Plaintiff argues that the WCAC erred in determining that his disability pension plan was not excepted from coordination because it had been "renewed" after March 31, 1982. Specifically, plaintiff contends that the process of signing a new collective bargaining agreement did not constitute a renewal of the plan. Plaintiff also contends that amendments of the PSERA did not constitute a renewal of the plan. I agree.

"Renewed" is defined as follows:

> 1. to begin or take up again; resume . . . . 2. to make effective for an additional period. 3. to restore or replenish. 4. to make, say or do again. 5. to revive; reestablish. . . . 7. to restore to a former state. 8. to begin again; recommence. [*Random House Webster's College Dictionary* (1992).]

In this case, the plan was entirely statutory. Thus, the parties could not, through collective bargaining, alter the plan in any manner. A review of the July 1988 collective bargaining agreement involved in this case, which does not refer to the retirement system established by the PSERA in any substantive fashion, reflects this fact.[1] I conclude that the July 1988 collective bargaining agreement did not "reestablish" or "make [the statutory disability pension plan] effective for an additional period" and, therefore, renew, the disability pension plan at issue.

As noted by both the WCAC and defendant, various sections of the PSERA have been amended since March 31, 1982. However, neither the "disability allowance"

---

[1] The only reference to the PSERA in the July 1, 1988, collective bargaining agreement is in Article XIX, section 3 of the agreement, which provides that an employee must be eligible for "immediate cash payments under the Michigan Public School Employees Retirement System by reason of death, disability, or meeting age requirements" in order for the employee to be eligible for $100 a year retirement pay from defendant.

provision contained in § 86 of the PSERA, MCL 38.1386; MSA 15.893(196), which both parties contend is the dispositive provision in this case, nor the "duty disability retirement allowance" provision of § 87 of the PSERA, MCL 38.1387; MSA 15.893(197), has been amended since 1980. Rather, these sections of the PSERA have continued in full force and effect without change since 1980. I fail to see how amendments of other sections of the PSERA would "reestablish" or "make [the disability provisions] effective for an additional period." See also MCL 8.3u; MSA 2.212(21) ("The provisions of any law or statute which is re-enacted, amended or revised, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws and not as new amendments."). Accordingly, I agree with plaintiff that any amendments of the PSERA after March 31, 1982, did not "renew" §§ 86 and 87 of the PSERA.

In summary, then, payments from plaintiff's disability pension are potentially subject to coordination where the disability pension is maintained by defendant under § 354(1). However, I would hold that plaintiff's disability pension is excepted from coordination by § 354(14) because it is a disability pension plan provided by the same employer that was in existence on March 31, 1982, and not thereafter renewed. I would reverse in this case.

In light of this holding, I would decline to consider plaintiff's argument that a coordination of benefits in this case would violate Const 1963, art 1, § 10 (prohibiting the impairment of contracts) or Const 1963, art 9, § 24 (prohibiting the impairment of the accrued financial benefits of state-provided pension plans and retirement systems).