LICKFELDT v DEPARTMENT OF CORRECTIONS

Docket No. 224139. Submitted July 10, 2001, at Lansing. Decided August 31, 2001, at 9:10 A.M. Leave to appeal sought.

Patricia L. Lickfeldt brought an action in the Washtenaw Circuit Court against the Department of Corrections and the warden and the records office supervisor of the Scott Correctional Facility, seeking a writ of mandamus ordering the defendants to terminate immediately the sentences imposed for the plaintiff's 1986 convictions of uttering and publishing. In 1986, the plaintiff was convicted of two counts of uttering and publishing and was sentenced to concurrent prison terms of 3½ to 14 years. In 1987, the plaintiff was convicted of prison escape and given a mandatory consecutive sentence. Subsequently, she was sentenced for several different series of crimes that were committed while on parole, some of the sentences being concurrent with each other but being consecutive to the sentences already being served. In 1998, the plaintiff filed her complaint for a writ of mandamus, alleging that she was entitled to have the 1986 sentences terminated as a result of having served the maximum terms of those sentences after adjustment for time served and good-time credit. The court, Melinda Morris, J., initially granted summary disposition for the defendants on the basis that the plaintiff had not established that she was entitled to mandamus because she had not established that she had served the maximum sentences for the 1986 convictions, but thereafter granted reconsideration, determined that the plaintiff had presented adequate and undisputed proof that the terms of the adjusted maximum sentences for the 1986 convictions had been completed on April 20, 1996, and granted mandamus, ordering the defendants to terminate the 1986 sentences as of the 1996 date. The defendants appealed.

The Court of Appeals *held*:

1. MCL 750.193(1) provides that an imprisoned person who breaks prison and escapes is guilty of a felony that is punishable by "further imprisonment" for not more than five years and that the further imprisonment "shall be served after the termination, pursuant to law, of the sentence or sentences then being served." Because the 1987 prison escape sentence was the second in the string of consecutive sentences that followed the plaintiff's 1986

sentences, the language of MCL 750.193(1) is unambiguous in its requirement that the original sentences must be terminated before the prisoner begins to serve the sentence for prison escape.

2. The defendants rely on a provision of the consecutive sentencing statute, MCL 791.234(3), that provides that the maximum terms of consecutive sentences shall be added to compute the new maximum term and that "discharge shall be issued only after the total of the maximum sentences has been served less good time and disciplinary credits" unless the prisoner is paroled, and on a Department of Corrections policy directive, PD 03.01.135, that provides that if a prisoner is serving consecutive sentences, "none of the sentences which are part of the consecutive string shall be terminated until all sentences in that consecutive string have been served." There is no conflict between MCL 750.193(1) and MCL 791.234(3), because MCL 750.193(1) deals with the termination of a sentence, while MCL 791.234(3) deals with the discharge of a prisoner. Although PD 03.01.135 speaks in terms of terminations, the policy directive is invalid to the extent that it modifies, extends, or conflicts with the clear mandate of MCL 750.193(1).

Affirmed.

O'CONNELL, J., dissenting, stated that the trial court erred in issuing the writ of mandamus, because the defendants did not have a clear legal duty to perform the action sought by the plaintiff. The use of the word "termination" in the context of MCL 750.193(1) does not indicate an intent by the Legislature that the defendants issue a certificate of termination while parts of a consecutive string of sentences remain to be served. The issuing of the writ of mandamus directing the defendants to terminate the plaintiff's 1986 sentences usurped the Department of Corrections' statutory authority to supervise and control the affairs of the department.

SENTENCES — CONSECUTIVE SENTENCES — TERMINATION OF SENTENCES.

A consecutive sentence for a prison break or escape is to be served after the termination of the sentence or sentences being served at the time of the prison break or escape; a prisoner is entitled to have the initial underlying sentence or sentences terminated on the completion of the maximum term or terms of the underlying sentence or sentences before beginning to serve a consecutive sentence for a prison break or escape (MCL 750.193[1]).

*Lynn B. D'Orio*, for the plaintiff.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Chester S. Sugierski, Jr.*, Assistant Attorney General, for the defendants.

Before: NEFF, P.J, and O'CONNELL and R. J. DANHOF*, JJ.

R. J. DANHOF, J. Defendants appeal as of right a grant of summary disposition and writ of mandamus ordering them to immediately terminate plaintiff's sentences from her 1986 convictions. We affirm.

Plaintiff is a prisoner currently serving a string of consecutive sentences. Her initial conviction was in 1986 when she was sentenced to 3½ to 14 years each for two counts of uttering and publishing, MCL 750.249. In 1987, she was sentenced for prison escape, a mandatory consecutive sentence, MCL 750.193. She has since added other sentences for subsequent crimes, some adding to her consecutive string under MCL 768.7a because she committed the crimes while she was on parole.

After plaintiff had served the fourteen-year maximum, adjusted for time served and good-time credit, she requested that defendants terminate her original sentences, arguing that termination is required by statute. This would reduce her security level and make her eligible for different facilities and programs that are not available at her security level. The trial court agreed with plaintiff that she had a statutory right to have the 1986 sentences terminated under MCL 750.193 and issued a writ of mandamus compelling defendants to comply. We agree that because of

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

the specific language used in MCL 750.193(1), plaintiff's original sentences must be terminated.

The issuance of a writ of mandamus is proper where (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial and involves no exercise of discretion or judgment, and (4) no other remedy exists, legal or equitable, that might achieve the same result. *Baraga Co v State Tax Comm*, 243 Mich App 452, 454-455; 622 NW2d 109 (2000). Thus, if plaintiff has no clear right to termination or if defendants have discretion to terminate sentences, a writ of mandamus is inappropriate. We review a trial court's decision regarding a writ of mandamus for abuse of discretion. *In re MCI Telecommunications Complaint*, 460 Mich 396, 443-444; 596 NW2d 164 (1999).

The outcome of this case hinges on the language of the statute that makes prison escape a felony:

> A person imprisoned in a prison of this state who breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts to escape from prison, is guilty of a felony, punishable by further imprisonment for not more than 5 years. *The term of further imprisonment shall be served after the termination, pursuant to law, of the sentence or sentences then being served.* [MCL 750.193(1) (emphasis added).]

Plaintiff's sentence for this crime became the second in her string, consecutively following her 1986 sentences. This statute unambiguously requires the original sentences to be terminated before the person begins to serve the sentence for prison escape.

Although the Legislature's use of the word "termination" in MCL 750.193 is conclusive in the matter of plaintiff's original sentence, we review defendants' arguments against mandated termination because the broader statutory context does not require this result for every sentence in plaintiff's consecutive string.

Defendants argue that the consecutive sentencing statute, MCL 791.234, requires them to maintain the sentence string in its entirety, and that the Department of Corrections' policy directive, PD 03.01.135, implements this requirement. The consecutive sentencing statute reads in relevant part:

> If a prisoner other than a prisoner subject to disciplinary time is sentenced for consecutive terms, whether received at the same time or at any time during the life of the original sentence, the parole board has jurisdiction over the prisoner for purposes of parole when the prisoner has served the total time of the added minimum terms, less the good time and disciplinary credits allowed by statute. The maximum terms of the sentences shall be added to compute the new maximum term under this subsection, and *discharge shall be issued only after the total of the maximum sentences has been served less good time and disciplinary credits*, unless the prisoner is paroled and discharged upon satisfactory completion of the parole. [MCL 791.234(3) (emphasis added).]

The policy directive at issue differs somewhat:

> OO. If a prisoner is serving on concurrent sentences, the non-controlling sentence(s) shall be terminated on the maximum minus regular good time or disciplinary credits which could be earned.
>
> PP. If a prisoner is serving on consecutive sentences, none of the sentences which are part of the consecutive string shall be terminated until all sentences in that consecutive string have been served. If a prisoner is serving two or

more different consecutive sentence series, the non-controlling series of consecutive sentences shall be terminated on the appropriate maximum, as described above. However, if a sentence is consecutive to more than one series of sentences, that sentence shall remain active until the controlling consecutive series has been served, even though the other sentence(s) in the non-controlling consecutive series is terminated. [PD 03.01.135, § III.]

Controlling sentences are those that have the longest maximum of concurrent sentences; that is, for a prisoner sentenced concurrently to one to two years for one crime and three to fourteen for another, the latter is the controlling sentence. The length of plaintiff's consecutive string is controlled in part by her original fourteen-year maximum sentence from 1986.

Although defendants argue that PD 03.01.135 and MCL 791.234(3) are analogous, plaintiff correctly notes that the statute mentions only discharges, not terminations, and she does not request that she be "discharged" from any of her sentences. The statutes and case law support the distinction: prisoners are "discharged," and sentences are "terminated."[1] Furthermore, the consecutive sentencing statute clarifies the issue in a later subsection:

If a prisoner other than a prisoner subject to disciplinary time has 1 or more consecutive terms remaining to serve in addition to the term he or she is serving, the parole board *may terminate* the sentence the prisoner is presently serving at any time after the minimum term of the sentence has been served. [MCL 791.234(5) (emphasis added).]

---

[1] PD 03.01.135 parallels this language; its headings include "Discharge of Prisoners" and "Termination of Non-Controlling Sentences." See also, e.g., MCL 791.265g(e).

Standing alone, MCL 791.234 distinguishes between "discharge" and "terminate," and clearly puts early termination at the discretion of defendants. When viewing it together with MCL 750.193 we find no conflict because discharge is different from termination and because although defendants must terminate the original sentence before imposing the prison escape sentence, they still have the discretion to terminate that sentence before the maximum. In contrast, defendants' policy directive concerns terminations, not discharges, and it squarely conflicts with MCL 750.193. PD 03.01.135 is therefore invalid to the extent that it modifies, extends, or conflicts with that statute. *Guardian Industries Corp v Dep't of Treasury*, 243 Mich App 244, 254; 621 NW2d 450 (2000); *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 243, n 26; 501 NW2d 88 (1993).

Our conclusion is further supported by MCL 768.7a, which mandates consecutive sentences for crimes committed by a person who has escaped from prison or who is on parole:

> (1) A person who is incarcerated in a penal or reformatory institution in this state, or who escapes from such an institution, and who commits a crime during that incarceration or escape which is punishable by imprisonment in a penal or reformatory institution in this state shall, upon conviction of that crime, be sentenced as provided by law. The term of imprisonment imposed for the crime shall begin to run at the *expiration* of the term or terms of imprisonment for which the person is serving or has become liable to serve in a penal or reformatory institution in this state.
>
> (2) If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to

run at the *expiration* of the remaining portion of the term of imprisonment imposed for the previous offense. [Emphases added.]

In this statute, the Legislature expressly used the term "expiration" rather than "termination." We presume that the phraseological distinction reflects a legislative intent to treat these concepts differently. *Tyler v Livonia Public Schools (On Remand)*, 220 Mich App 697, 701; 561 NW2d 390 (1996). We therefore conclude that all of plaintiff's sentences, except for the original sentences she was serving when she was convicted of prison escape, merely "expire" as they are completed, effectively moving the string along from sentence to sentence. MCL 768.7a does not require the termination of any earlier sentences, although under MCL 791.234(5), defendants may terminate those sentences at their discretion once the minimum terms have been served. This significantly differs from MCL 750.193(1), where the Legislature mandated that plaintiff's original sentences *must* terminate before she begins to serve her sentence for prison escape. Plaintiff has a clear statutory right to that termination; defendants have no discretion in the matter. Thus, the trial court correctly ordered defendants to terminate plaintiff's original sentence, which she was serving at the time of her conviction of prison escape.

The question remains whether the effective date of termination should be the statutory maximum or the individual's actual maximum with adjustments for credits. This issue was not raised by the parties and in this case is moot because the maximum possible term, fourteen years, has since passed. The trial court determined April 20, 1996, as the effective date be-

cause it found plaintiff submitted adequate and undisputed proof that her adjusted sentence would have ended on that date. We see no reason to find error in this determination.

Affirmed.

NEFF, P.J., concurred.

O'CONNELL, J., (*dissenting*). I respectfully dissent. I cannot join the majority opinion because I disagree with its conclusion that MCL 750.193(1) requires the Michigan Department of Corrections (MDOC) to issue a certificate of termination once an individual has served the maximum term of a sentence. The majority's holding is contrary to the Legislature's intent in enacting § 193 of the Penal Code, MCL 750.1 *et seq.*, and there is nothing in the plain language of the statute that supports the imposition of such a duty on defendants. Because defendants do not have a clear legal duty to perform the action sought by plaintiff, I would reverse the trial court's issuance of a writ of mandamus.[1]

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff filed the instant action seeking a writ of mandamus on February 3, 1998. In the complaint, plaintiff alleged that defendants were required by law to terminate[2] a sentence once she had served the maximum term. When she filed the instant action,

---

[1] A trial court's determination regarding a writ of mandamus is reviewed by this Court for an abuse of discretion. *In re MCI Telecommunications Complaint*, 460 Mich 396, 443; 596 NW2d 164 (1999).

[2] The parties do not dispute that an inmate's sentence is terminated when it is closed out as an administrative matter while the inmate continues to serve remaining consecutive sentences.

plaintiff was incarcerated in the Scott Correctional Facility in Plymouth, Michigan.

A review of plaintiff's storied criminal record, consisting of numerous consecutive sentences, provides a useful backdrop for analyzing plaintiff's claim. According to the record, plaintiff was convicted of two counts of uttering and publishing, MCL 750.249, in 1986, and was sentenced to concurrent terms of 3½ to 14 years' imprisonment. In 1987, plaintiff was convicted under Michigan's prison escape statute, MCL 750.193, and sentenced to an additional consecutive term of nine months to five years' imprisonment. In 1990, plaintiff was convicted of larceny of a rental vehicle, MCL 750.362a, and was sentenced to a term of eight months to two years' imprisonment. In 1990, plaintiff was also convicted of writing an insufficient funds check, MCL 750.131(3)(c),and was sentenced to eight months to two years' imprisonment. These sentences were to be served concurrently, but consecutively to the prison escape conviction. Additionally, in 1997, plaintiff was convicted of another count of writing an insufficient funds check, MCL 750.131(3)(a), and sentenced to a term of one to two years' imprisonment. Also, in 1997, plaintiff was convicted of making a false statement to procure a financial transaction device, MCL 750.157v, and sentenced to a term of two to four years' imprisonment.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiff was not entitled to termination of her sentences. The trial court initially granted defendants' motion, concluding that plaintiff's claim was not ripe because she had not served the maximum sentences for the uttering and publishing convictions. After plaintiff moved for re-

consideration, the trial court issued a writ of mandamus ordering defendants to terminate plaintiff's sentences for uttering and publishing, effective April 20, 1996.

## II. STANDARD OF REVIEW AND PRINCIPLES OF STATUTORY CONSTRUCTION

We review de novo a trial court's decision regarding a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Whether MCL 750.193(1) requires defendants to issue a certificate of termination once an individual has served the maximum term of a sentence presents an issue of statutory construction that is also subject to review de novo. *Haliw v Sterling Heights*, 464 Mich 297, 302; 627 NW2d 581 (2001); *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999). When construing the language of a statute, the following well-settled principles are of guidance.

> The rules of statutory construction are well established. The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. *Murphy v Michigan Bell Telephone Co*, 447 Mich 93, 98; 523 NW2d 310 (1994). See also *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997). This task begins by examining the language of the statute itself. The words of a statute provide "the most reliable evidence of its intent . . . ." *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative

intent. *Luttrell v Dep't of Corrections*, 421 Mich 93; 365
NW2d 74 (1984). [*Sun Valley Foods Co v Ward*, 460 Mich
230, 236; 596 NW2d 119 (1999).]

This Court must interpret words in a statute
according to their "plain and ordinary meaning." *Her-
ald Co v Bay City*, 463 Mich 111, 118; 614 NW2d 873
(2000), citing MCL 8.3a and *Turner v Auto Club Ins
Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995); see also
*Massey v Mandell*, 462 Mich 375, 380; 614 NW2d 70
(2000). Moreover, our Supreme Court has recently
articulated the importance of construing a word or
phrase in a statute in its proper context.

> "Contextual understanding of statutes is generally
> grounded in the doctrine of *noscitur a sociis*: '[i]t is known
> from its associates,' see Black's Law Dictionary (6th ed),
> p 1060. This doctrine stands for the principle that a word or
> phrase is given meaning by its context or setting." [*Brown v
> Genesee Co Bd of Comm'rs*, 464 Mich 430, 437; 628 NW2d
> 471 (2001) (opinion by CORRIGAN, C.J.), quoting *Tyler v Livo-
> nia Public Schools*, 459 Mich 382, 390-391; 590 NW2d 560
> (1999).]

Further, this Court may not "read [anything] into
the statute that is not within the manifest intent of
the Legislature as gathered from the [statute] itself."
*In re Juvenile Commitment Costs*, 240 Mich App 420,
427; 613 NW2d 348 (2000). MCL 750.193 is a criminal
statute that is part of Michigan's Penal Code, MCL
750.1 *et seq.* Consequently, it is to be "construed
according to the fair import of [its] terms . . . to effect
the objects of the law." MCL 750.2; see also *People v
Armstrong*, 212 Mich App 121, 127; 536 NW2d 789
(1995).

### III. ANALYSIS

The majority bases its conclusion that defendants are required to terminate plaintiff's sentences for uttering and publishing on its interpretation of the prison escape statute, MCL 750.193. At the time plaintiff filed the mandamus action in February 1998, MCL 750.193(1) provided in pertinent part:[3]

> A person imprisoned in a prison of this state who breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts to escape from prison, is guilty of a felony, *punishable by further imprisonment for not more than 5 years. The term of the further imprisonment shall be served after the termination, pursuant to law, of the sentence or sentences then being served.* [Emphasis supplied.]

According to the majority, the language in § 193 stating that "[t]he term of further imprisonment [imposed pursuant to this section] shall be served *after the termination, pursuant to law,* of the sentences or sentences then being served" requires defendants to "terminate the original sentence before imposing the prison escape sentence." *Ante at* 305 (emphasis supplied).[4] I disagree.

Because the word "termination" is not defined in the statute, this Court is required to give it its plain and ordinary meaning, "taking into account the context in which the word[] [was] used." *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72,

---

[3]  MCL 750.193 was subsequently amended by 1998 PA 510, effective January 8, 1999.

[4]  The parties do not dispute that a sentence is terminated when defendants issue a certificate of termination.

85; 592 NW2d 112 (1999) (citations omitted); see also *Massey, supra* at 380. In discerning the word's plain and ordinary meaning, it is appropriate to consult the dictionary definition. *Popma v Auto Club Ins Ass'n,* 446 Mich 460, 470; 521 NW2d 831 (1994). As relevant to this context, Random House Webster's College Dictionary (2d ed, 1997) defines termination as "the fact of being terminated" and "an end, close or conclusion."

The majority errs in holding that the plain language of § 193 requires defendants to issue a certificate of termination for an original sentence before an individual begins to serve a sentence for prison escape. In contrast, I believe the plain and unambiguous language of § 193 reflects the Legislature's intention that a sentence imposed for a conviction under § 193 be served consecutively to the sentence for which the individual was originally imprisoned. See *People v Connor,* 209 Mich App 419, 428; 531 NW2d 734 (1995) ("[T]he sentence for prison escape must be served consecutively to the sentence or sentences then being served."); see also *People v Mandell,* 166 Mich App 620, 622; 420 NW2d 834 (1987). In other words, the Legislature's use of the word "termination," viewed in its proper context, indicates that an ensuing sentence for prison escape should be served at the close of the original sentence. Notably, there is nothing in the text of § 193 suggesting that the Legislature intended that defendants be required to issue a certificate of termination once the maximum term of the original sentence is completed.[5] A review of the

---

[5] Additionally, I disagree with the majority to the extent that it may conclude that the plain and ordinary meaning of the word "termination" in

legislative history of § 193, together with case law interpreting the statute, supports my conclusion.

The Legislature's earliest codification[6] of the prison escape statute provided in pertinent part:

> If any person, being imprisoned in the state prison for any term less than for life, shall break prison and escape, or break prison, though no escape shall actually be made, or shall, by force and violence attempt to escape therefrom, he shall be punished by further imprisonment in the state prison not more than three years, or by fine not exceeding five hundred dollars; *and every prisoner who shall actually escape as aforesaid, shall, after his return to such prison, be imprisoned for as long a time as remained unexpired of his former sentence, at the time of such escape, besides such further term of imprisonment as aforesaid.* [1846 RS, ch 156, § 24. (emphasis supplied).]

In my opinion, a plain reading of the language of 1846 RS, ch 156, § 24 unambiguously reflects the Legislature's intention that a sentence imposed for prison escape be served at the completion of the original

---

§ 193 refers to the process by which defendants administratively close out an inmate's sentence.

[6] The Legislature first enacted the prison escape statute in 1840. See 1840 PA 39, § 4. As enacted in 1840, the prison escape statute provided:

> That if any person being imprisoned in the state prison for any crime not punishable with death, shall break prison and escape, or break prison though no escape shall actually be made, or shall, by force and violence attempt to escape therefrom, he or she so offending shall, on conviction, be punished by fine not exceeding five hundred dollars, or by further imprisonment in the state prison, not exceeding three years, or both, at the discretion of the court; *and when any prisoner shall actually break the prison and escape, or escape without breaking the prison, the court, in addition to the sentence for breaking the prison and escaping, shall sentence such offender to imprisonment for as long a time as may have remained unexpired, of his former sentence, at the time of such escape.* [Emphasis supplied.]

sentence for which the inmate was already incarcerated. This statutory language remained substantially the same[7] until 1955 when the Legislature enacted 1955 PA 264, which amended the statute to read in pertinent part:

> Any person, being imprisoned in any prison of this state for any term, who shall break prison and escape, or break prison though no escape be actually made, or shall escape, or shall leave said prison without being discharged from said prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, *punishable by further imprisonment for not more than 3 years.* [Emphasis supplied.]

1955 PA 264 thus streamlined the language of § 193, providing only that an individual convicted under the statute be punished by "further imprisonment." However, one year later the Legislature enacted 1956 PA 6, which once again amended the language of the statute to provide as follows:

> Any person, being imprisoned in any prison of this state for any term, who shall break prison and escape, or break prison though no escape shall be actually made, or shall escape, or shall leave said prison without being discharged from said prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, punishable by imprisonment for not more than 3 years, *such further imprisonment to be served after the termination, pursuant to law, of any sentence or sentences then being served.* [Emphasis supplied.]

Consequently, 1956 PA 6 represented the first occasion the Legislature inserted the language directing

---

[7] See 1857 CL 5843; 1871 CL 7676; 1915 CL 14995; 1929 CL 16586; 1948 CL 750.193.

that further imprisonment imposed pursuant to § 193 "be served after the termination . . . of any sentence . . . then being served." The Legislature's use of this language was not fortuitous. Indeed, a review of the relevant case law leads me to conclude that the Legislature amended the language of the statute in 1956 to manifest its intent that sentences imposed pursuant to § 193 be served after the completion of the original sentence.

For example, in *People v Shotwell*, 352 Mich 42, 44; 88 NW2d 313 (1958), the defendant argued that the trial court exceeded its authority in ordering that his sentence for prison escape be served consecutively to his original sentence for a fraud conviction. Our Supreme Court, construing the predecessor of § 193,[8] rejected this argument, and offered the following observations concerning the purpose of the prison escape statute.

> We think it is also evident from the applicable language of the escape statute itself that the legislature contemplated "further" imprisonment for escaping prison. It said so. We also think it fairly obvious that the legislature sought to

---

[8] The *Shotwell* Court considered the language of 1948 CL 750.193, which provided in pertinent part:

> Any person, being imprisoned in any prison of this State for any term, who shall break prison and escape, or break prison though no escape be actually made, or shall escape, or shall leave said prison without being discharged from said prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, punishable by further imprisonment for not more than 3 years, and every prisoner who shall actually break prison or escape or attempt to break prison, or attempt to escape as aforesaid, shall after his return to such prison, be imprisoned for as long a time as remained unexpired of his former sentence, at the time of such breaking, escape, or attempt to break or escape, besides such further term of imprisonment as aforesaid.

provide some sort of deterrent to prison escapes. A contrary view would defeat this objective since many prisoners could thus escape with both impunity and immunity, since their original sentences might easily devour any interim concurrent escape sentence. In fact the view offered by defendant would tend to put a premium upon the act of escape: If a prisoner made it, all would be well; if he should be caught, no further time would be drawn. We do not think the legislature ever wanted to reach any such result. At least we hesitate to reach such a result by inference. [*Id.* at 46-47]

See also *In re Evans*, 352 Mich 185, 187-188; 89 NW2d 535 (1958).

Other panels of this Court have construed the current language of § 193, concluding that it manifests the Legislature's intention that sentences imposed for an escape conviction run consecutively to the original sentence for which the defendant was incarcerated. In *People v Passalacqua*, 48 Mich App 634, 635; 211 NW2d 59 (1973), a panel of this Court opined:

The punishment for the offense of prison escape is an exception to the concurrent sentence requirement. MCLA 750.193; MSA 28.390 provides in part that prison escape "shall be . . . *punishable by further imprisonment . . . to be served after the termination, pursuant* to law, *of any sentence* or sentences then being served. (Emphasis supplied.)

In our opinion this statute means exactly what it says. The defendant's sentence for prison escape is to start at the completion of the sentence he was serving at the time of his prison escape.

See also *People v Biniecki*, 35 Mich App 335, 336-337; 192 NW2d 638 (1971) (language of escape statute "clearly requires a consecutive sentence . . ."); *People v Bachman*; 50 Mich App 682, 686; 213 NW2d 800 (1973) (in MCL 750.193 "the Legislature unambigu-

ously directed that [a] sentence for prison escape commence at the completion of any former sentences 'then being served'"); *People v Pruitt*, 23 Mich App 510, 516; 179 NW2d 22 (1970) (language of § 193 indicates that a sentence for conviction under this statute is "an exception to the concurrent sentence requirement . . ."); *People v Andrews No 2*, 52 Mich App 728, 729; 218 NW2d 383 (1974) (MCL 750.193 "provides that sentences imposed for the crime of prison escape are to be served after the termination of terms then being served by defendants").

Returning to the present case, I agree with the previous panels of this Court who have concluded that the language of § 193 reflects the Legislature's intention that a sentence imposed pursuant to that section be served consecutively to an inmate's original sentence. In my respectful opinion, the primary shortcoming of the majority opinion is its willingness to read into § 193 a meaning that was not intended by the Legislature. The text of the statute is clear and unambiguous. Nothing in the plain language of the statute mandates that defendants must terminate an individual's sentence once the maximum term has been served. Consequently, I disagree with the majority's statement that "[p]laintiff has a clear statutory right to . . . termination [of her sentences]." *Ante* at 306.

A review of the Legislature's use of the word "termination" in the context of § 193 further leads me to conclude that the Legislature did not intend that defendants be required to issue a certificate of termination. See *Brown, supra.* As I previously indicated, § 193 is part of Michigan's Penal Code, MCL 750.1 *et seq.* In my opinion, had the Legislature intended to

require defendants to terminate a sentence once its maximum term was served, it would have stated so. Presumably, the appropriate place for such a mandate would have been in the Department of Corrections act, MCL 791.201 *et seq.*, where the Legislature has enacted legislation concerning, among other things, the MDOC's jurisdiction, procedures governing parole, and the location of correctional facilities. Further, as defendants observe in their brief on appeal, the Legislature manifested its intention that defendants be required to issue a certificate of discharge once an individual has completed parole. See MCL 791.242. Conversely, there is no such manifest indication with respect to certificates of termination. Rather, as the majority concedes, MCL 791.234(5)[9] leaves to the discretion of the MDOC the decision whether to terminate a sentence presently being served by an inmate.

Recently, in *People v McIntire*, 461 Mich 147; 599 NW2d 102 (1999), our Supreme Court cautioned lower courts from reading into the text of a statute a meaning that was not clearly intended by the Legislature. I find the Court's comments to be especially pertinent in the instant case.

> "[T]raditional principles of statutory construction . . . force courts to respect the constitutional role of the Legislature as a policy-making branch of government and constrain the judiciary from encroaching on this dedicated sphere of constitutional responsibility. Any other nontextual

---

[9] MCL 791.234(5) provides:

If a prisoner other than a prisoner subject to disciplinary time has 1 or more consecutive terms remaining to serve in addition to the term he or she is serving, the parole board *may* terminate the sentence the prisoner is presently serving at any time after the minimum term of the sentence has been served. [Emphasis supplied.]

approach to statutory construction will necessarily invite judicial speculation regarding the probable, but unstated, intent of the Legislature with the likely consequence that a court will impermissibly substitute its own policy preferences. See *Cady v Detroit*, 289 Mich 499, 509; 286 NW 805 (1939) ('Courts cannot substitute their opinions for that of the legislative body on questions of policy')." [*McIntire, supra* at 153, adopting the dissenting opinion of now Justice YOUNG in *People v McIntire*, 232 Mich App 71; 591 NW2d 231 (1998).]

Like the Court in *McIntire, supra*, I will not condone the majority's decision to read beyond the clear text of MCL 750.193 to find "an unexpressed legislative intent" that the MDOC is required to terminate a sentence once the maximum term has been served. *McIntire, supra*, 461 Mich 153.

Additionally, I wish to highlight my concern that the trial court, by ordering defendants to issue a certificate of termination for plaintiff's sentences in the absence of any statutory authority requiring such action, violated the separation of powers doctrine. As I observed in my concurring and dissenting opinion in *Michigan State AFL-CIO v Secretary of State*, 230 Mich App 1, 31-32; 583 NW2d 701 (1998):

[T]he principle of separation of powers . . . forms "the fundamental framework of our system of government." *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524, 541-542; 273 NW2d 829 (1979). As a general rule, the principle recognizes the distinct provinces of the legislative, judicial, and executive branches of government, and mandates that no one branch attempt to "control, direct or restrain the action" of another. *Massachusetts v Mellon*, 262 US 447, 488; 43 S Ct 597; 67 L Ed 1078 (1923). This principle is expressly embedded into our state constitution: "No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly

provided in this constitution." Const 1963, art 3, § 2. As our Supreme Court has noted, a purpose of the separation of powers is "to make certain that the judiciary does not substitute its judgment for that of the Legislature as to what is best or what is wisest." *O'Donnell, supra* at 542. *This principle is likewise offended when the judiciary attempts to substitute its judgment for that of the executive branch.* [Emphasis supplied.]

The MDOC was created by chapter 12 of the Executive Organization Act, MCL 16.375, and is an administrative agency within the executive branch of Michigan's government. Const 1963, art 5, § 2; *In re Parole of Bivings*, 242 Mich App 363, 372; 619 NW2d 163 (2000); *Hopkins v Parole Bd*, 237 Mich App 629, 636; 604 NW2d 686 (1999). On appeal, defendants maintain that they retain the discretion to terminate an inmate's sentences by virtue of policy directive 03.01.135, the pertinent portion of which provides:

If a prisoner is serving on consecutive sentences, none of the sentences which are part of the consecutive sentence string shall be terminated until all sentences in that consecutive string have been served. If a prisoner is serving two or more different consecutive sentence series, the non-controlling series of consecutive sentences shall be terminated on the appropriate maximum, as described above. However, if a sentence is consecutive to more than one series of sentences, that sentence shall remain active until the controlling consecutive series has been served, even though the other sentence(s) in the non-controlling series is terminated.

I agree with defendants' position. By enacting MCL 791.203, the Legislature provided the director of the MDOC the authority "to supervise and control the affairs of the department." See *Blank v Dep't of Corrections*, 462 Mich 103, 116; 611 NW2d 530 (2000)

(opinion by KELLY, J.). The Legislature also delegated to the director the authority to create rules for the "control, management, and operation of the general affairs of the department." MCL 791.206(1)(a); see also *Blank, supra* at 116; *Boyd v Civil Service Comm*, 220 Mich App 226, 235; 559 NW2d 342 (1996). Further, MCL 791.204 provides that the MDOC has exclusive jurisdiction over "penal institutions," *Dearden v Detroit*, 403 Mich 257, 265; 269 NW2d 139 (1978), and all matters relating to parole. Additionally, in *Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 297; 586 NW2d 894 (1998), our Supreme Court recognized that "[t]he power of each branch of government within its separate sphere necessarily includes managerial administrative authority to carry out its operations."

In my opinion, the MDOC, as part of the executive branch, is entitled to implement policy directives regarding the termination of sentences, *Bivings, supra* at 373, because such action relates to the control, management, and operation of the department. MCL 791.206, 791.203. Consequently, by issuing a writ of mandamus directing defendants to terminate plaintiff's sentences, I believe the trial court usurped the MDOC's exclusive power to supervise, manage, and control the affairs of the department. Because plaintiff has not demonstrated that she "has a clear legal right to the performance of the duty sought to be compelled," *White-Bey v Dep't of Corrections*, 239 Mich App 221, 223-224; 608 NW2d 833 (1999), I would reverse the trial court's issuance of a writ of mandamus.