WASHTENAW COMMUNITY COLLEGE EDUCATION
ASSOCIATION v BOARD OF TRUSTEES OF THE WASHTENAW
COMMUNITY COLLEGE

1. CONSTITUTIONAL LAW—CONTRACTS—IMPAIRMENT OF CONTRACTUAL
   OBLIGATIONS.
   The constitutional limitation on a state's power to impair the
   obligation of contract is not to be read with mathematical
   exactness since it is not every modification of a contractual
   promise that impairs the obligation of contract (US Const, Art
   I, § 10; Const 1963, art 1, § 10).

2. CONSTITUTIONAL LAW—CONTRACTS—IMPAIRMENT OF CONTRACTUAL
   OBLIGATIONS—BALANCING TEST.
   A state's economic interests and sovereign right to protect the
   general welfare of the people must be balanced against the
   constitutional limitation in each case where the state is alleged
   to have impaired the obligation of contract; however, a state in
   furtherance of its economic interests or protection of its peo-
   ple's welfare may not adopt as its policy the repudiation of
   debts or the destruction of contracts or the denial of a means to
   enforce them (US Const, Art I, § 10; Const 1963, art 1, § 10).

3. CONSTITUTIONAL LAW—CONTRACTS—IMPAIRMENT OF CONTRACTUAL
   OBLIGATIONS—STATUTES.
   A statute which simply restricts a party to those benefits reason-
   ably to be expected from a contract, although it may impair the
   obligation of contract, is not subject to challenge under the
   constitutional clause prohibiting a state from passing any law
   impairing the obligation of contract (US Const, Art I, § 10;
   Const 1963, art 1, § 10; 1970 PA 83).

4. CONSTITUTIONAL LAW—CONTRACTS—IMPAIRMENT OF CONTRACTUAL
   OBLIGATIONS—STATUTES—COLLEGES AND UNIVERSITIES.
   A statute prohibiting a community college's board of trustees
   from contributing to more than one retirement fund which in
   effect foreclosed the board from contributing any funds to a
   private pension fund as required under a collective bargaining

REFERENCE FOR POINTS IN HEADNOTES
[1–5] 16 Am Jur 2d, Constitutional Law §§ 439, 449 *et seq.*

agreement with its employees did more than merely restrict the employees to retirement benefits reasonably expected from the contract, but rather obliterated those benefits with respect to the private pension fund and did not allow any gain; therefore, the statute is subject to challenge under the contract clause (US Const, Art I, § 10; Const 1963, art 1, § 10; 1970 PA 83).

5. CONSTITUTIONAL LAW—CONTRACTS—IMPAIRMENT OF CONTRACTUAL OBLIGATIONS—STATUTES—COLLEGES AND UNIVERSITIES.

A statute which required junior and community colleges to contribute to a public school employees retirement fund was a reasonable step toward insuring public school employees a pension during their retirement years, but the statute's simultaneous prohibition upon contributions to other retirement funds did nothing to further that legitimate end and cannot be said to protect the vital interests or further the general welfare of the people; therefore, the welfare and interests of the state were not so substantial as to justify abrogation by the statute of the retirement provisions in a collective bargaining contract between a community college's board of trustees and its employees and the statute unconstitutionally impaired the contract's provisions (US Const, Art I, § 10; Const 1963, art 1, § 10; 1970 PA 83).

Appeal from Washtenaw, John W. Conlin, J. Submitted Division 2 June 18, 1973, at Lansing. (Docket No. 15662.) Decided November 2, 1973.

Complaint by Washtenaw Community College Education Association and James Davenport, for himself and for all other persons similarly situated, against the Board of Trustees of Washtenaw Community College for a declaratory judgment regarding a private pension fund under a contract. Summary judgment for defendant. Plaintiffs appeal. Reversed.

*Foster, Lindemer, Swift & Collins* (by *Lynwood E. Beekman*), for plaintiffs.

*Jackson & Lamb,* for defendant.

Before: T. M. BURNS, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

T. M. BURNS, P. J. Plaintiffs appeal from a summary judgment entered in favor of the defendant.

The plaintiff Washtenaw Community College Education Association (hereinafter referred to as the association) is composed of individuals engaged in the profession of education and employed at the Washtenaw Community College, which is operated by the defendant board of trustees. The association is the exclusive bargaining representative for all the professional personnel employed by the community college.

The other named plaintiff, James Davenport, is an instructor employed by the college and is a member of the association. In addition, Mr. Davenport was a participant in the Teacher Insurance & Annuity Association (TIAA)—College Retirement Equities Fund (CREF), an optional private retirement fund program.

After a period of collective bargaining, the association and board of trustees executed a master contract. The agreement became effective on July 1, 1969, and expired on August 31, 1971. Article VII, § 6, of the master contract provided:

"TIAA-CREF—The instructor shall have the right to join and make deposits in TIAA and/or CREF retirement funds. The board will deposit to the credit of the instructor an amount which matches the instructor's deposit but not to exceed five percent (5%) of the instructor's contracted salary."

On July 19, 1970, the Legislature by 1970 PA 83 made the yearly appropriation to Washtenaw

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Community College for the fiscal year 1970–1971. Section 2(c) of the act stated:

"Each of the amounts appropriated shall be used solely for the respective purposes herein stated, except as otherwise provided by law. Under no circumstances shall any junior or community college, college or university pay an employer's contribution to more than one retirement fund providing benefits for any employee."

Inasmuch as the board of trustees was required by another section of 1970 PA 83 to make payments to the public school employees retirement fund, § 2(c) of 1970 PA 83 precluded any payments by the board to the privately operated pension fund, *i.e.,* TIAA-CREF. Thereafter the board of trustees refused to make payments to the private pension fund notwithstanding that their commitment was evidenced by the master contract.

In December of 1970, the plaintiffs filed a complaint in the Washtenaw County Circuit Court seeking a declaratory judgment pursuant to GCR 1963, 521 alleging that 1970 PA 83 unconstitutionally impaired the board of trustees' obligation under the master contract with respect to the TIAA-CREF retirement provision.

Subsequently, the plaintiffs filed a motion for a summary judgment or in the alternative a partial summary judgment on the grounds that the defendant had failed to state a valid defense and that there were no genuine issues as to any material facts concerning the controversy. GCR 1963, 117.2(2), (3).

The circuit court rendered an opinion on the plaintiffs' motion for a summary judgment and found that there was no constitutional impairment of the obligation of contract. Accordingly an order

entering a summary judgment in favor of the defendant was entered and the case was dismissed.

Plaintiffs and the defendant have stipulated on appeal that in the event the plaintiffs ultimately prevail in the present action, the board of trustees will: (1) pay to the individual members of the association who have since August 31, 1971 withdrawn from the fund or exercised the right to repurchase shares in the fund, those contributions which would be made to the TIAA-CREF retirement plan; and (2) with respect to all other members direct the appropriate contribution to the TIAA-CREF fund.

On the motion below and again on appeal plaintiffs argue that 1970 PA 83 unconstitutionally impairs the contractual obligation of the board of trustees to make the requisite contributions to the TIAA-CREF retirement fund. As noted earlier, the trial court found that there was no unconstitutional impairment.

The outcome of the instant appeal turns upon the interpretation and application of Article 1, § 10, of the United States Constitution which provides in pertinent part:[1]

"No state shall * * * pass any * * * law impairing the obligation of contracts."

In *El Paso v Simmons,* 379 US 497; 85 S Ct 577; 13 L Ed 2d 446 (1965), *reh den,* 380 US 926; 85 S Ct 879; 13 L Ed 2d 831 (1965), the State of Texas sold vast acreages of public land under a 1910 statute which provided for the forfeiture of the land back to the state in the event the purchasers failed to pay the interest due under the contract of sale. The statute also provided that in case of

---

[1] Const 1963, art 1, § 10, similarly provides: "No * * * law impairing the obligation of contract shall be enacted".

forfeiture the purchaser or vendee could reinstate his claim at any time by paying the full amount of interest due to the state. The Legislature subsequently amended the statute in 1941 to require that the right of reinstatement be exercised within five years from the date of forfeiture. A purchaser who had purchased land under the terms of the 1910 statute attempted to reinstate his claim more than five years after forfeiture. The state rejected the application for reinstatement as being untimely. The purchaser brought suit asserting that the 1941 statute requiring reinstatement within five years of forfeiture unconstitutionally impaired the obligation of contract made under the 1910 statute which provided for an unlimited time for reinstatement.

On appeal the United States Supreme Court rejected the purchasers' argument explaining that the constitutional limitation on a state's power to impair the obligation of contract is not to be read with mathematical exactness and that "it is not every modification of a contractual promise that impairs the obligation of contract". 379 US 506–507; 85 S Ct 582–583; 13 L Ed 2d 453–454. In each case where a state is alleged to have impaired the obligation of contract, the state's economic interests and "sovereign right * * * to protect the * * * general welfare of the people" (379 US 508; 85 S Ct 584; 13 L Ed 2d 455) must be balanced against the constitutional limitation. However, the Court cautioned, quoting from *Home Building & Loan Association v Blaisdell,* 290 US 398; 54 S Ct 231; 78 L Ed 413 (1934), that a state in furtherance of its economic interests or protection of its peoples' welfare may not " 'adopt as its policy the repudiation of debts or the destruction of contracts or the denial of a means to enforce them' ". 379

US 509; 85 S Ct 584; 13 L Ed 2d 455. In addition the Court noted:

"Laws which restrict a party to those gains reasonably to be expected from the contract are not subject to attack under the Contract Clause, notwithstanding that they technically alter an obligation of a contract." 379 US 515; 85 S Ct 587; 13 L Ed 2d 458.

Applying the foregoing principles to the facts of the case, the Court found that the purpose of the 1941 statute was to restore the integrity of land titles and to enable the state to protect and administer its realty in a businesslike manner, the five-year limitation for defaulting purchasers to reinstate their interest was designed to eliminate land speculation and merely restricted purchasers to those gains reasonably expected under the contract, and that the unlimited reinstatement provision was neither the primary consideration nor an integral part of the contracts entered into pursuant to the 1910 statute. Based upon these facts, the Court held that the 1941 statute did not unconstitutionally impair the obligation of contract.

More recently this Court adopted the rationale of *El Paso v Simmons, supra,* in *Michigan Transportation Co v Secretary of State,* 41 Mich App 654; 201 NW2d 83 (1972), *lv to app den,* 389 Mich 767 (1973). In this latter case § 801(k) of the Vehicle Code (MCLA 257.801; MSA 9.2501) provided that except where otherwise agreed in writing, the lessee of a truck or road tractor without a trailer was to pay the individual owner-operator 60% of the state registration fee. The plaintiffs as motor carriers and the defendants as owner-operators negotiated a collective bargaining agreement which, as one of its provisions, required the owner-operators to pay the entire registration fee. Subse-

quently the Legislature amended § 801(k) and deleted the provision creating an exception to the rule that lessees pay 60% of the registration fee. Plaintiffs brought suit alleging *inter alia* that the deletion of the exception unconstitutionally impaired their right not to pay the registration fee per the terms of the collective bargaining contract.

After discussing *El Paso v Simmons, supra,* among other cases, this Court reasoned that deletion of the exception to § 801(k), providing for payment of the registration fees by lessees, impaired the collective bargaining agreement. However, in light of the Michigan Public Service Commission's requirement that all motor carriers be certified, with the result that owner-operators must deal with and in effect become employees of certified carriers, the carriers would be able to exert undue influence upon any bargain struck with the owner-operators and thus "presumably the Legislature considered the public interest in the continued virility and stability of this segment of our economy to be sufficient to warrant adoption of this legislation pursuant to its police power in order to protect against possible harmful effects of such threat". 41 Mich App 667; 201 NW2d 90. Under these circumstances the Court concluded although the statutory amendment in question impaired the collective bargaining agreement, the state's interest in protecting the trucking industry outweighed the constitutional proscription against the impairment of contracts and therefore the impairment complained of by the plaintiffs was not unconstitutional. The Court also noted in its closing comments that as in *El Paso v Simmons, supra,* the contractual provision impaired by the subsequent amendment of § 801(k) was neither the central undertaking of the parties nor formed the

primary consideration and that the bulk of the contract was left intact.

Having analyzed the applicable law, we now turn to the resolution of the question of whether § 2(c) of 1970 PA 83, which prohibits a community college from contributing funds to more than one retirement plan, unconstitutionally impairs the collective bargaining contract between plaintiff and defendant which requires the defendant board of trustees to contribute an amount equal to a maximum of five percent of a professional employee's salary to the TIAA-CREF retirement fund. There is no dispute over whether § 2(c) of 1970 PA 83 impaired the collective bargaining contract. That there was an impairment is clear. However, the controversy centers upon whether the impairment is constitutional since not every modification of a contract is per se unconstitutional. *El Paso v Simmons, supra.*

At the outset, we must ascertain whether the impairment in question is subject to attack under the Contract Clause. Although a statute may impair the obligation of contract, it is not subject to challenge under the Contract Clause where the statute simply restricts a party to those benefits reasonably to be expected from the contract. *El Paso v Simmons, supra.*

As noted earlier, the defendant board of trustees was required by 1970 PA 83 to contribute to the public school employees retirement fund. Section 2(c) of the act prohibited the board from contributing to more than one retirement fund which in effect foreclosed the board from contributing any funds to the TIAA-CREF as required under the collective bargaining contract. Here it is patent that § 2(c) of 1970 PA 83 did far more than merely restrict plaintiffs to those gains, *i.e.,* retirement

benefits, reasonably expected from the contract. It obliterated these benefits and did not allow any gain. Therefore it is our opinion that § 2(c) of 1970 PA 83 is subject to challenge under the Contract Clause.

Following the principles enunciated by the *El Paso* and *Michigan Transportation* Courts, our task narrows to determining whether the state's concern in protecting the vital interests and general welfare of the populace outweighs the constitutional ban on the impairment of contracts.

The defendant suggests that § 2(c) of 1970 PA 83 was enacted to place the public school employees retirement fund on a sound financial basis. Our research, however, does not disclose a clear statement of legislative intent and we find nothing to indicate that the public school employees retirement fund is in danger of financial ruination. Assuming such were the case for purposes of this appeal, we would agree requiring junior and community colleges to contribute to the public school employees retirement fund would be a reasonable step toward alleviating the problem and would thereby be in furtherance of the general welfare of the state. However, the simultaneous prohibition upon contributions to other retirement funds would not result in any more money being diverted to the public retirement system. The general welfare of the state is fully protected by requiring payments to the public fund in order to insure public school employees a pension during their retirement years. The additional prohibition on contributions to other retirement funds does nothing to further that legitimate end and therefore cannot be said to protect the vital interests or further the general welfare of the people.

Next we examine the nature of the contractual

obligation being impaired. From common experience, and as correctly pointed out in plaintiffs' brief, we note that retirement benefits accorded to an employee whether in the public or private sector are of vital and ever-increasing importance particularly in an age of spiraling inflation. Here an employee could increase his compensation as much as five percent by participating in the TIAA-CREF retirement fund which in some cases could mean additional compensation of up to $1,600. Approximately 60% of those eligible did participate in the TIAA-CREF retirement fund. Under these circumstances we do not find that the retirement benefits impaired by § 2(c) of 1970 PA 83 were but an incidental part of the collective bargaining contract.

Neither do we find, as did the Court in *Michigan Transportation Co, supra,* that the Legislature, by prohibiting junior and community colleges from expending funds on a private retirement system which was a bargained-for benefit of the most traditional type, had in mind protecting the "continued virility and stability of this segment of our economy".

After thoroughly examining the record and briefs in this case, it is our opinion that the welfare and interests of the state were not so substantial as to justify the abrogation of the retirement provisions in the collective bargaining contract and that the Legislature attempted to do what the majority in *El Paso, supra,* declared it may not do, that is: repudiate the obligation of contract made under the state's aegis and eliminate both the gains reasonably expected under the contract and means to enforce the impaired provisions. We hold, therefore, that § 2(c) of 1970 PA 83 unconstitutionally impaired the retirement provi-

sions of the collective bargaining contract in question.

Plaintiffs also contend that § 2(c) of 1970 PA 83 denies them equal protection of the laws. This question was not raised in the court below, therefore, the question is not properly before us. Furthermore in view of our disposition of the Contract Clause question, the equal protection issue need neither be discussed nor decided.

For the reasons delineated above, the decision of the trial court is reversed.

All concurred